

# JUDGMENTS PURCHASE AGREEMENT

### Between

### Chase Bank USA, National Association

### And

### DebtOne, L.L.C.

### Dated as of

### December 10, 2009

### Dormant PAN Judgment

### Ad Hoc Sale



DEFENDANT'S EXHIBIT A

(JPA-AH 2008621)

## <u>JUDGMENTS PURCHASE AGREEMENT</u>

THIS AGREEMENT is made as of December 10, 2009 ("Effective Date") by and between CHASE BANK USA, NATIONAL ASSOCIATION, a national banking association, ("Seller") and DebtOne, L.L.C. ("Purchaser").

## WITNESSETH

WHEREAS, Seller in the normal course of its banking business operates line of credit and credit card programs;

WHEREAS, in connection with the operation of its program, Seller from time to time initiates law suits against account holders who are delinquent, and subsequently enters judgments against some of such account holders;

WHEREAS, Seller desires to sell certain of these Judgments to Purchaser, and

WHEREAS, Purchaser desires to purchase such Judgments, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants and agreements of the parties hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      Definitions

As used herein, the following terms have the following meanings:

"**Account**" means an account established for an Account Holder pursuant to Seller's line of credit and/or credit card program and, as the context requires, the balance of all amounts due from the applicable Account Holder on such Account(s); such indebtedness being the basis for the Judgment entered against an Account Holder.

2

"**Account Holder**" means the person(s) or entity who or which is obligated to repay an Account, and against whom a Judgment has been entered.

"**Business Days**" shall mean Monday – Friday except for federal holidays (e.g. New Year's Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Thanksgiving and Christmas) and such other days when Seller is closed.

"**Closing Date**" shall mean each date as may be set by Seller for the purchase and sale of Accounts pursuant to Section 2 of this Agreement.  The Closing Date shall occur no later than three (3) Business Days after the File Creation Date.

"**Confidential Information**" shall mean all oral, written or electronically delivered information and material, in tangible or intangible form, including all copies thereof, partial or complete in whatever media and information relating to Chase and/or its customers, including, but not limited to, names, addresses, telephone numbers, and account numbers.

"**File Creation Date**" means the date the Seller creates a list of Accounts that will be sold to Purchaser on the Closing Date.

"**Ineligible Judgment**" means any Judgment for which any of the following circumstances are true on or prior to the File Creation Date: (i) the Primary Account Holder voluntarily filed for bankruptcy protection or involuntarily became subject to bankruptcy proceedings; (ii) the Primary Account Holder died prior to the entry of Judgment; (iii) any Judgment which is subject to pending litigation, or is being handled by a collection agency or attorney either through sale or assignment; (iv) any Judgment validly settled; (v) the Seller, or any of its duly appointed agents, had delivered to all Account Holders a release of liability or satisfaction of their obligations to the Seller; (vi) the Account Holder, his counsel, administrator, guardian or other authorized representative has asserted in writing through an affidavit of fraud that the Account or any transaction on the

3

Account was fraudulently originated or used prior to or as of the Closing Date and such assertion is unresolved to the reasonable satisfaction of Seller prior to such Closing Date.

"**Judgment**" is a judgment entered by a court of law in a lawsuit initiated by Seller against an Account Holder to collect the amount due from the Account Holder on one or more delinquent Account(s).

"**Judgment Balance**" is calculated by taking the judgment amount awarded by the court, which includes the amount of any prejudgment interest, costs and attorney fees allowed by the court, less any subsequent payments applied to the judgment amount, plus post-judgment costs and interest calculated from the judgment entry date at the judgment rate allowed by applicable state law.

" **Primary Account/Cardholder**" means the first name on the account, as reflected in Seller's records and which can be located on the sale file in columns titled Last Name and First Name.

"**Purchase Price**" means the amount to be paid by Purchaser to Seller on the Closing Date for the purchase and sale of Judgments as determined pursuant to the provisions of Section 2(b) hereof.

"**Recallable Judgment**" means any Judgment which, in the sole discretion of Seller, meets any of the following criteria:

(i)     any Judgment which is the subject of a Charge-off reversal; or

(ii)    any Judgment or factual issue concerning an Account comprising the Judgment which has been referred to the Seller's Executive Office, Seller's regulators, or any federal, state or local government agency or authority;

(iii)   any Judgment which Seller has a reasonable business need to recall; or

(iv)    is an Ineligible Judgment.

4

2.     **Sale of Judgments**

(a)     Subject to the terms and conditions of this Agreement, on the Closing Date, Seller will sell, assign and transfer to Purchaser all of its rights, title and interest in such Judgments (which Judgments will be listed either on electronic media or a spreadsheet per Section 2(e) hereof) or as the parties shall agree to from time to time. The Purchaser expressly acknowledges and agrees that this Agreement is for a single sale and Purchaser has no rights in regard to any sales Seller may offer in the future.

(b)     In consideration of the sale by Seller to Purchaser of Judgments as provided in Section 2(a), Purchaser agrees to pay Seller on the Closing Date, by certified check or wire transfer, an amount equal to 1.02 ( one and two one hundredths) (%) percent of the Judgment Balance of the Accounts which are the basis for the Judgments then being sold.

(c)     The sale shall be for Judgments in one or more billing cycles and shall be documented by:  (i) a Bill of Sale in the form attached hereto as Exhibit A; (ii)  an Assignment of Judgment for each judgment in the form attached hereto as Exhibit B ; and (iii) a Closing Statement prepared by Seller in the form attached hereto as Exhibit D. Exhibit C, or similar summary assignment, will also be provided for certain jurisdictions requested by Purchaser.

(d)     Any information that Seller provides to the Purchaser prior to the sale shall be deemed Seller's Confidential Information. Any information Seller provides with respect to Judgments not purchased by Purchaser, or later returned as an Ineligible Judgment shall, be deemed Seller's Confidential Information. Any information Seller provides with respect to Judgments not purchased by Purchaser, or later returned as an Ineligible Judgment shall,

at Seller's option and request, be returned to Seller or destroyed by Purchaser. Purchaser shall certify in writing such destruction of Confidential Information to Seller.

(e)     Information to be provided on electronic media or a spreadsheet referred to in Section 2(a) above shall be delivered electronically to Purchaser on the File Creation Date. Seller will send by overnight courier service, electronic media or a spreadsheet containing the same information sent electronically to Purchaser for each Judgment, which shall include the information listed on Exhibit D, but such information shall be provided only as it is reasonably available to Seller.  Purchaser shall pay the Purchase Price for such sale to Seller by 2:00 p.m. Eastern Time on the Closing Date pursuant to wiring instructions provided to Purchaser.  Until such time as Seller has received the Purchase Price for the applicable Judgment and Seller has executed a Bill of Sale therefore, all such information shall be deemed Seller's Confidential Information and property. Prior to the aforesaid sale, without Seller's prior written consent, Purchaser shall not disclose or release any of Seller's Confidential Information to any third party, other than (i) to Purchaser's financing entities, lenders, accountants or counsel in connection with this Agreement or (ii) if compelled to do so pursuant to judicial or administrative order. Prior to providing any Seller Confidential Information to any such third-party, Purchaser will obtain a written acknowledgement from such third party that the information is Seller's Confidential Information and will not be used for any purpose other than for determining whether financing for Purchaser's purchase of Seller's Judgments shall be made available. Upon either a failure to purchase the Judgments or to procure financing for the purchase, Purchaser shall obligate such third party to destroy Seller's Confidential Information. Purchaser hereby represents to Seller that Seller's Confidential Information shall be

destroyed within ten (10) days of a determination to neither purchase nor finance the purchase of Judgments as referenced above.

3.   **Operational**

(a)   Seller , will report to each of the credit bureaus it uses, that the Judgments or Accounts have been sold to Purchaser to the extent that each credit bureau provides such reporting. Except as set forth in the preceding sentence, Seller shall have no obligation with respect to credit bureau reporting for the Judgments.

(b)   Purchaser agrees not to refer any inquiries from Account Holders whose Judgments are the basis of this Agreement to Seller but to handle any such inquiries directly with Seller.

(c)   Purchaser agrees not to attempt to collect any amount in excess of the Judgment Balance of any Judgment and additional post-Judgment interest on the Judgment Balance and post Judgment costs incurred in the enforcement of the Judgment as permitted under applicable law.

(d)   Purchaser agrees to file the Assignment of Judgment provided for each Judgment within  30 days of the Closing Date in the appropriate court or office for the jurisdiction in which the Judgment was entered.

(e)   Upon payment in full or payment of any settlement agreed to by the Purchaser, Purchaser shall file a satisfaction of the Judgment within 14 days of the final payment in the appropriate court or office for the jurisdiction in which the Judgment was entered.

4.   **Documentation**

(a)     On the Closing Date, Seller shall provide Purchaser with copies of the Judgments obtained, if available, on each Account which is purchased pursuant to this Agreement.

(b)     For a period of up to three (3) years from the Closing Date and upon receipt of a written request from Purchaser, Seller shall, to the extent such documents are reasonably available, provide Purchaser with copies of signed Account applications, applicable terms and conditions, and other media relating to the Judgments, up to a maximum monthly number of documents of 2.5% of the number of Judgments sold hereunder. Seller shall provide one such document at no charge for up to ten percent (10%) of the Judgments.  If the total number of documents provided is greater than ten percent (10%) but less than twenty-five percent (25%) of the Judgments purchased under this Agreement, Seller may, in its sole discretion, honor such additional requests and charge Purchaser ten dollars ($10.00) for each document provided.   If the total number of documents provided exceeds twenty-five percent (25%) of the Judgments, Seller may in its sole discretion honor such additional request and charge Purchaser fifty dollars ($50.00) for each document provided. Notwithstanding the foregoing, Seller shall have no obligation to retrieve or provide any documents to any assignee of the Purchaser without Seller's prior written consent.

(c)     Payment for documents pursuant to subparagraph (b) is due thirty (30) days from Seller's invoice date.

(d)     If Purchaser files any legal action to collect on a purchased Judgment and requests or subpoenas an officer or employee of the Seller or an affiliate to appear at a trial, hearing or deposition to testify about the Judgment, the Purchaser shall pay the Seller or the affiliate for the officer's or employee's time in traveling to, attending and testifying at the

trial, hearing or deposition, whether or not the officer or employee is called as a witness, at the then current hourly rate of such officer or employee. The Purchaser will also reimburse the Seller or the affiliate for the officer's or employee's out-of-pocket, travel and other related expenses.

5.   **Representations and Warranties of Seller**

(a)      Seller is a national banking association duly organized, validly existing and in good standing under the laws of the United States with full power and authority to enter into this Agreement to sell the Judgments, and to carry out the terms and provisions hereof.

(b)      Seller has the power and authority and all licenses and permits ("Authorizations"), if any, required by governmental authority to carry on its business as now being conducted which relate to the Judgments, which Authorizations are in full force and effect.

(c)      The execution and delivery of this Agreement and the performance hereunder have been duly authorized on or prior to the Closing Date, by all necessary actions on the part of Seller and no provision of applicable law or regulation or the charter or by-laws of Seller or any agreement, judgment, injunction, order, decree or other instrument binding upon Seller is or will be contravened by Seller's execution and delivery of this Agreement or Seller's performance hereunder.

(d)      No Authorization, consent, approval, license, qualification or formal exemption from, nor any filing, declaration or registration with, any governmental agency or regulatory authority or any other body is required in connection with the execution, delivery or performance by Seller of this Agreement, which Authorization, consent,

approval, license, qualification or formal exemption from, or filing declaration or registration has not been obtained on or prior to the Closing Date.

(e)     No Authorization, consent, approval, license, qualification or formal exemption from, nor any filing, declaration or registration with any governmental agency or regulatory authority or any other body is required in connection with the sale of any or all of the Judgments to be sold on the Closing Date, which Authorization, consent, approval, license, qualification or formal exemption or filing, declaration or registration has not been obtained on or prior to such date.

(f)     Seller has good and marketable title to each Judgment to be sold hereunder and each such Judgment shall be transferred free and clear of any lien or encumbrance.

(g)     No third party, including but not limited to law firms that obtained the Judgments, have or are entitled to any legal interest or rights in such Judgments or proceeds therefrom sold pursuant to this Agreement.

(h)     Seller hereby acknowledges and represents that the sale of Judgments to Purchaser hereunder (i) is not made in contemplation of the insolvency of Seller; (ii) is not made with the intent to hinder, delay or defraud the creditors of Seller; (iii) has been approved by an officer of Seller with the authority to approve the sale of Judgments; (iv) will be recorded in the records of Seller, and (v) represents a bona fide and arm's length transaction undertaken for adequate consideration in the ordinary course of business. Further, Seller hereby acknowledges and represents that Purchaser is neither an insider nor an affiliate of Seller.

(i)        Each Judgment to be sold by Seller to Purchaser hereunder shall be in effect as of the Closing Date and no such Judgment shall have been set aside or vacated prior to its sale to Purchaser hereunder.

(j)        **EXCEPT AS PROVIDED IN THIS SECTION, THE JUDGMENTS ARE BEING SOLD "AS IS" AND "WITH ALL FAULTS", WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER AS TO EITHER CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, AND SELLER SPECIFICALLY DISCLAIMS ANY WARRANTY, REPRESENTATION, ORAL OR WRITTEN, PAST OR PRESENT, EXPRESS OR IMPLIED, CONCERNING THE JUDGMENTS, OR THE STRATIFICATION OR PACKAGING OF THE JUDGMENTS.**

(k)        The representations and warranties contained in this Section 5 shall survive the Closing Date as evidenced by the execution and delivery of the applicable Bill of Sale therefor until the first anniversary thereof.


6.        **Representations and Warranties of Purchaser**

(a)        Purchaser is a  limited liability company organized and existing under the laws of the state of  Louisiana with full power and authority to enter into this Agreement, to purchase the Judgments, and to carry out the terms and provisions hereof.

(b)        Purchaser has the power and authority and all licenses and permits ("Authorizations"), if any, required by governmental authority to carry his business as now being conducted which relate to the Judgments, which Authorizations are in full force and effect.

(c)     The execution and delivery of this Agreement by Purchaser and his performance hereunder have been duly authorized on or prior to the Closing Date, by all necessary action on the part of Purchaser and no provision of applicable law, regulation or any agreement, judgment, injunction, order, decree or other instrument binding upon Purchaser is or will be contravened by Purchaser's execution and delivery of this Agreement or Purchaser's performance hereunder.

(d)     No Authorization, consent, approval, license, qualification or formal exemption from, nor any filing, declaration or registration with, any governmental agency or regulatory authority or any other body is required to be obtained by Purchaser in connection with its execution, delivery or performance of this Agreement, which Authorization, consent, approval, license, qualification or formal exemption from, or filing declaration or registration has not been obtained on or prior to the Closing Date.

(e)     No Authorization, consent, approval, license, qualification or formal exemption from, nor any filing, declaration or registration with, any governmental agency or regulatory authority or other body is required to be obtained by Purchaser in connection with the purchase of any or all of the Judgments to be purchased on the Closing Date, which Authorization, consent, approval, license, qualification or formal exemption, or filing, declaration or registration has not been obtained on or prior to such date.

(f)     Subject to Section 8 of this Agreement, Purchaser's sole remedy against Seller for any breach of this Agreement is limited to reimbursement in accordance with the terms of Section 8.  The foregoing limitation shall not in any manner limit Seller's indemnification obligation under Section 8 of this Agreement.

(g)     Purchaser is a sophisticated purchaser that is in the business of buying Judgments and collecting on accounts that are similar to the accounts that are the basis of the Judgments being sold hereunder.

(h)     Purchaser agrees to immediately notify Seller in writing of any unauthorized misappropriation, disclosure or use by any person or any of Seller's Confidential Information which may come to its attention and to take immediate steps to limit, stop, or otherwise remedy such misappropriation, disclosure or use.

(i)     The representations and warranties contained in this Section 6 shall survive the execution and delivery of the Closing Date as represented by the Bill of Sale therefor until the first anniversary thereof.

7.     **Compliance with the Law**

(a)     In the performance of its collection efforts with respect to the purchased Judgments, Purchaser agrees at all times to comply with all requirements of all applicable federal, state and local laws, rules and regulations, including, without limitation, the requirements of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.), the Fair Credit Reporting Act (15 U.S.C.§1681, et seq.), and the U.S. Bankruptcy Code (11 U.S.C.§101, et seq.).

(b)     In the event Purchaser receives a notice from any state or federal agency that it is being investigated for violations of any debt collection practices statute or regulation, Purchaser shall promptly, but in no event more than ten (10) days after receipt of such notice, notify Seller that such investigation has been initiated. Purchaser shall provide Seller with details of the allegations made and of Purchaser's intended response thereto.

(c)     Purchaser shall comply with all state and local laws, court rules and procedures regarding the satisfaction of Judgments upon the payment or settlement thereof by or on behalf of the Account Holder.

8.     **Indemnification**

   **(a) By Purchaser**

Purchaser agrees to indemnify and hold Seller (including its parent, affiliates, subsidiaries, officers, directors, employees, and agents) harmless from and against any claims, actions, suits or other actual or threatened proceedings, and all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) incurred or suffered by Seller by reason of the breach of any of Purchaser's representations or warranties, or the willful misconduct or violation of any applicable law, rule or regulation by Purchaser (or its employees or agents) in connection with the collection,  enforcement or satisfaction of the purchased Judgments. At its sole option, Seller shall have the right to require Purchaser to assume the defense of any claims, actions, suits or other actual or threatened proceedings and to directly pay for all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) which may be imposed.

   **(b) By Seller**

Seller agrees to indemnify and hold Purchaser  (including its parent, affiliates, subsidiaries, officers, directors, employees, and agents) harmless from and against any claims, actions, suits or other actual or threatened proceedings, and all losses, Judgments, damages, expenses or other costs (including all fees and disbursements of counsel) incurred or suffered by Purchaser by reason of the breach of any of Seller's representations or warranties, or the willful misconduct or violation of any applicable law, rule or regulation by Seller (or its employees or agents) in connection with actions taken by the Seller prior to

the entry of the applicable Judgment. At its sole option, and upon prompt notice from Purchaser of any claim, suit or threatened action, Seller shall have the right to assume the defense of any claims, actions, suits or other actual or threatened proceedings and to directly pay for all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) which may be imposed.

9.    **Relationship**

(a)    Nothing in this Agreement is intended to or shall be construed to constitute or establish an agency, joint venture, partnership or fiduciary relationship between the parties, and neither party shall have the right or authority to act for or on behalf of the other with respect to any matter.

(b)    Purchaser agrees that any Judgments purchased pursuant to this Agreement shall, if sold by Purchaser, continue to be subject to all terms and conditions set forth herein.

(c)    Purchaser further agrees that this Agreement shall be disclosed to and made a part of any contract of sale and all other document evidencing the transfer of ownership of the Judgments to a third party.

10.    **Notices/Payments**

Any and all notices/payments or other communications required or permitted under this Agreement shall be in writing and shall be delivered by Federal Express or similar overnight courier service for delivery the next business morning, addressed as follows:

If to Seller:                          Chase Bank USA, N.A
                                       c/o Chase Bankcard Services, Inc.
                                       5200 President's Court
                                       Frederick, MD 21703-3913
                                       Attn: Brian K. Bonner, Operations Manager

and

Chase Bank USA, N.A.
201 North Walnut Street
Wilmington, DE 19801
Attn: Frank Borchert
S.V.P. & General Counsel

If to Purchaser:             Suzanne O. Middleton
DebtOne, L.L.C.
3619 18th Street
Metairie, LA 70002

or to such other person or address as either party shall have previously designated to the other by written notice sent Federal Express or similar courier service for delivery next business morning.

11.   **Assignment**

Purchaser and Seller may each assign this Agreement to an affiliate or the successor surviving entity in any merger, reorganization or the like, upon the condition that the assignee shall assume, either expressly or by operation of law, all of Seller's or Purchaser's respective obligations hereunder; and provided further, that Purchaser may assign, as security, its rights in the Judgments and its rights under this Agreement to the financial institution (and its successors, assigns or affiliated corporations) which is providing financing to Purchaser for the Purchase Price hereunder.  Purchaser also may sell or transfer any or all of the Judgments purchased hereunder, but Seller shall have no obligation to any such transferee of the Judgments.

12.   **Use of Seller's Name**

(a)     In any litigation which Purchaser undertakes to collect monies owed on the Judgments, it shall sue in its own name and shall not include the Seller's name in the caption of the action, either as a plaintiff or in any other capacity.

(b)     Purchaser shall not use the name of Seller in any way in the operation of its collection of the Judgments including, but not limited to, checks, drafts, letters and forms, except that Seller shall permit Purchaser to refer to a purchased Judgment in the body of a collection letter as Judgment purchased from Seller.

13.   **Repurchase of Judgments**

(a)     If, within one hundred twenty (120) days following the Closing Date, Purchaser determines that an Ineligible Judgment, other than a Judgment subject to subparagraph (d) below, was included among the purchased Judgments, then the Seller agrees, upon receipt of written demand by Purchaser within such 120-day period (the "Written Notice"), to repurchase such Ineligible Judgment. The repurchase price for the Ineligible Judgment shall be an amount equal to Purchase Price for such Judgment determined in accordance with Section 2(b), less any amounts received by Purchaser in connection with such Ineligible Judgment. Each such demand for the repurchase of Ineligible Judgments shall be accompanied by documentary evidence as set forth on Exhibit E in addition to commercially recognized third party databases, reasonably satisfactory to Seller to establish that a Judgment is an Ineligible Judgment.

(b)     For each Judgment identified in the Written Notice, Seller shall have forty-five (45) days from the date it receives such notice to provide Purchaser with specific evidence that a Judgment identified in the Written Notice is not, in fact, an Ineligible Judgment. Seller's failure to provide such evidence or Seller's failure to respond to the

Written Notice within forty-five (45) days of its receipt of such notice shall mean that Seller concurs with Purchaser's findings. In such event, Seller shall repurchase the Ineligible Judgment within (sixty) 60 Business Days of its receipt of the Written Notice, and Seller shall have no further liability or obligation to the Purchaser hereunder; provided, however, that the repurchase shall not relieve Seller from its obligation to indemnify Purchaser as provided under Section 8 of this Agreement.   In no event shall such repurchase release, discharge, or relieve Purchaser from any claim of any third party with respect to the underlying Ineligible Judgment or its collection.

(c)     In the event of any purported class action naming the Seller as a defendant involving any Judgment sold hereunder, Seller shall have the unlimited right to recall and repurchase such Judgment. The repurchase price for such Judgment shall be as described above. If any such Judgment has been sold to a third party by Purchaser, Purchaser shall first repurchase such Judgment from such third party.

(d)     If, within forty-five (45) days following the Closing Date, Purchaser determines that a Judgment is an Ineligible Judgment because an Account Holder voluntarily filed for bankruptcy protection or became the subject of an involuntary bankruptcy proceeding and that bankruptcy has not been dismissed, then Seller agrees, upon the written demand by Purchaser made within such 45-day period (the "Bankruptcy Written Notice"), to repurchase such Ineligible Judgment.. The repurchase price for the Ineligible Judgment shall be an amount equal to Purchaser's payment for such Judgment as determined by Section 2(b), less any amounts received by Purchaser in connection with such Ineligible Judgment. For each Judgment that Purchaser has identified in the Bankruptcy Written Notice as an Ineligible Judgment, the Seller shall have forty-five (45) days from the date it receives such notice to provide specific evidence to the contrary.

Seller's failure to provide specific evidence to the contrary or to respond within forty-five (45) days of receipt of the Written Notice shall mean that Seller concurs with the Purchaser's findings. In such event, Seller will repurchase the Ineligible Judgment within (sixty) 60 business days of the Written Notice, in accordance with the provisions set forth in subparagraphs (a) and (b) above, and Seller shall have no further liability for any such breach and no further obligation to the Purchaser hereunder; provided, however, that the repurchase shall not relieve Seller from its obligation to indemnify Purchaser, as provided under Section 8 of this Agreement.  In no event shall such repurchase release, discharge, or relieve Purchaser from any claim of any third party with respect to the underlying Ineligible Judgment or its collection..

(e)    In connection with the repurchase of Ineligible Judgments hereunder, Seller and Purchaser shall prepare, execute and exchange appropriate bills of sale.   All communications in connection with a repurchase or substitution of an Ineligible Account involving Confidential information of a Cardholder shall be consistent with the standards set forth in Section 13(f) hereof.

(f)    Purchaser shall provide at Seller's request an encrypted Excel spreadsheet reconciliation sale file using PC Guardian Secure Export file software or encrypted software as otherwise approved by Seller.  The Excel spreadsheet shall include a list of Judgments, Seller's 16 digit Judgment number for each Judgment, Account Holder's first and last name, and social security number. Such list will exclude Ineligible Judgments repurchased by Seller.

(g)    This Section 13 shall be Purchaser's sole remedy in the event Seller has sold Ineligible Judgments to Purchaser.

(h)      Once an account has been repurchased by Seller, the Purchaser will remove all credit bureau reporting from the Cardholder's credit report.

(i)      In the event that Purchaser has filed an Assignment of Judgment or any other appearance with a court on a repurchased Judgment, Purchaser shall provide Seller with the documents necessary to reassign the judgment to Seller and allow the Seller to appear in the court.

**14.   Seller's Recall**

(a)      If, at any time following the Closing Date, Seller determines that a Judgment is a Recallable Judgment, Seller shall have the right to repurchase such Judgment and Purchaser hereby agrees to return to the Seller the Recallable Judgment and any payments, information and correspondence relating to such Recallable Judgment within thirty (30) days of notice by Seller.

(b)      If Seller recalls a Judgment determined to be a Recallable Judgment, Seller shall repurchase such Recallable Judgment as follows: Seller shall remit to Purchaser an amount equal to the original Purchase Price of the Judgment being recalled within sixty (60) Business Days of the date Seller receives the payments and information required pursuant to subparagraph (a) above.

(c)      In connection with the repurchase of a Recallable Judgment hereunder, Purchaser shall execute a bill of sale assigning all right, title and interest to such Recallable Judgments back to Seller and, if an Assignment of Judgment or appearance has been entered in any court, Purchaser shall provide such documents as are necessary to reassign the Judgment to the Seller and permit the Seller to appear in court as the owner of the Judgment.

15.   <u>Payments</u>

All payments received on purchased Judgments by Seller on or after the File Creation Date shall be remitted to Purchaser within sixty (60) days of receipt by Seller. Payments received by Seller more than ninety (90) days after the File Creation Date shall be remitted to Purchaser within sixty (60) days of Seller's receipt, with the Seller retaining ten (10%) percent of such payment as a service fee. Payments received more than one hundred eighty (180) days after the File Creation Date shall be remitted to purchaser within sixty (60) days of Seller's receipt, with the Seller retaining twenty (20%) percent of such payment as a service fee.

16.   **Accounting Records**

For a period of three (3) years from the Closing Date, Purchaser agrees to provide Seller, its affiliates, or its authorized agents with information with respect to one or more Judgments purchased hereunder which Seller needs to reconcile Seller's accounting records as to such Judgments.

17.   **Insurance**

Purchaser shall maintain at its sole expense general liability insurance with a financially sound and reputable insurer in an amount of at least two million ($2,000,000) dollars per occurrence. Purchaser, upon request, shall provide a copy of its certificate of insurance to Seller by delivering such copy to Chase Bank USA, N.A., 5202 Presidents Court Frederick , MD 21703 Attn: Brian K. Bonner Operations Manager, Asset Sales.

18.   **Severability**

If any term or condition of this Agreement should be held invalid by a court or tribunal of competent jurisdiction in any respect, such invalidity shall not affect the validity of any other term or condition hereof. If any term or condition of this Agreement shall be held unreasonable as to time, scope or otherwise by such a court or tribunal, it shall be

21

Case 5:10-cv-00496-FB-JWP   Document 2-1   Filed 09/10/10   Page 22 of 26

construed by limiting or reducing it to a minimum extent so as to be enforceable under then applicable law.   The parties acknowledge that they would have executed this Agreement with any such invalid term or condition excluded or with any such unreasonable term or condition so limited or reduced.  The parties acknowledge that each has been represented by counsel in its review and negotiation of this Agreement and that no presumption or other means of construction shall exist against either party drafting this Agreement.

19. **Survival**

The provisions of Sections 2, 3, 4, 5, 6, 8, 9(b), 10, 12, 13, 15, 16, 18, 22, 24, 25, 26, 27, 28, and 29 shall survive the termination or cancellation of this Agreement, but such survival shall be limited when expressly provided for herein.

20. **Cancellation/Termination**

Seller may cancel this Agreement upon five (5) days prior written notice to Purchaser if (i) Purchaser fails or refuses to purchase any Judgments offered for sale hereunder to Purchaser by Seller, or (ii) Purchaser becomes insolvent, has instituted a bankruptcy proceeding seeking relief under any bankruptcy law, has an involuntary petition for bankruptcy filed against it and fails to have such petition dismissed within thirty (30) days of the filing date, or makes a general assignment for the benefit of creditors, or (iii) is dissolved or passes a resolution for its winding up, other than pursuant to a merger, consolidation or transfer of substantially all of its assets, or (iv)  Purchaser becomes the subject of any investigation by a state or federal agency regarding its debt  collection practices, or (v) Purchaser breaches any other term or condition herein and fails to cure such breach with five (5) days  of  receipt of Chase's notice of such breach.

21. **Contract Executed in Counterparts**

This Agreement may be executed in counterparts, each of which shall be deemed an original, including facsimile transmissions thereof, but all of which together shall constitute one and the same instrument

22.   **No Third Party Beneficiaries**

This Agreement is for the sole and exclusive benefit of the parties hereto, nothing in this Agreement shall be construed to grant to any person other than the parties hereto, and their successors and permitted assigns, any right, remedy or claim under or in respect of this Agreement or any provision hereof.

23.   **Brokers**

With the exception of National Loan Exchange, Inc., neither party hereto has had or is having any dealings with, or has received any services from any additional finder, broker, agent or other similar party, who is or will be entitled to a commission, fee or other payment of any nature in connection with this Agreement or any transaction contemplated hereby.

24.   **Governing Law**

This Agreement shall be governed by and construed in accordance with the laws of Delaware, without regard to any conflict of law principles.  Purchaser consents and submits to the jurisdiction of the state and federal courts of New York, County of New York in connection with any controversy arising out of and related to this Agreement.  Both parties also agree to irrevocably waive all rights to trial by jury in any action proceeding or counterclaim arising out of or relating to his Agreement or any amendment hereto.  The prevailing party in any such litigation shall be entitled to reimbursement for its reasonable attorney's fees and the cost of expenses of litigation.

25.   **Purchaser's Duty to Keep Confidential**

From and after the execution of this Agreement, Purchaser shall keep confidential, and shall cause its officers, directors, employees and agents to keep confidential the terms of this agreement and all information related to the Judgments sold hereunder, other than as may be necessary to disclose in order to collect on the Judgments or to report Judgments experience to credit bureaus and any and all information obtained from Seller concerning the assets, properties, and business of Seller, and shall not use such Confidential Information for any purpose other than those contemplated by this Agreement, provided, however, the Purchaser shall not be subject to the obligations set forth in the proceeding clause with respect to any such information provided to it by Seller which either (i) was in Purchaser's possession at the time of Seller's disclosure, (ii) is lawfully obtained by Purchaser from a third party, or (iii) is or becomes a matter of public knowledge, (iv) is required to be disclosed to any governmental authority, court or regulatory agency. Purchaser agrees that Seller would suffer irreparable harm and that damages caused by a breach of this Section 25 would be impossible to calculate and would, therefore, be an inadequate remedy.  Accordingly, the Purchaser agrees that Seller shall be entitled to temporary and permanent injunctive relief against the Purchaser and/or its agents for any threatened or actual breach hereof.  In the event Seller initiates any action to enforce the obligation of the Purchaser or its agents hereunder, the Purchaser agrees to reimburse Seller for all costs and expenses, including reasonable attorney's fees, incurred by Seller in this regard.  Nothing in this Agreement shall be construed to limit Purchaser's obligation under any provisions of any confidentiality agreement entered into between Purchaser and Seller.

26.    **Public Announcement**

Neither Purchaser nor Seller shall make any public announcement of this Agreement or provide any information concerning this Agreement or the subject matter hereof

to any representative of the news media or any other person not a party to this transaction without the prior approval of the other party. The parties herein will not respond to any inquiry from public, governmental or administrative authorities concerning this Agreement without prior consultation and coordination with each other.

27.      **Independent Contractors**

Nothing in this Agreement shall be deemed to create a partnership or joint venture between the parties. Except as expressly set forth herein, no party shall have any authority to bind or commit the other party. In the performance of its duties or obligations under this Agreement or any other contract, commitment, undertaking or agreement made pursuant to this Agreement, each party hereto shall not be deemed to be, or permit itself to be understood as, an agent of the other party hereto and shall at all times take whatever measures are necessary to ensure that its status shall be that of an independent contractor operating a separate entity.

28.      **Limitation of LIABILITY**

EXCEPT FOR EACH PARTY'S OBLIGATIONS UNDER SECTION 8 (INDEMNIFICATION) AND PURCHASER'S OBLIGATIONS WITH RESPECT TO SELLER'S CONFIDENTIAL INFORMATION, IN NO EVENT SHALL EITHER PARTY HERETO, ITS AFFILIATES, OR THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES OR THIRD PARTY PROVIDERS BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, OR FOR ANY DAMAGES FOR LOST DATA, BUSINESS INTERRUPTION, LOST PROFITS, LOST REVENUE OR LOST BUSINESS ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, REGARDLESS OF WHETHER SUCH DAMAGES COULD HAVE BEEN FORESEEN OR PREVENTED BY EITHER PARTY HERETO OR WHETHER

SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

29.    **Entire Agreement/Amendment**

This Agreement, including Exhibits, constitutes the entire understanding between the parties with respect to the subject matter and supersedes all prior written and oral proposals, understandings, agreements and representations, all of which are merged and incorporated herein. No amendment of this Agreement shall be effective unless in writing and executed by each of the parties hereto.

IN WITNESS WHEREOF, the parties to this Agreement have caused it to be executed by its duly authorized officers as of the day and year first written above.

CHASE BANK USA, N.A.                     DebtOne, L.L.C.

By: _____                By: _____

Name: ___**KEITH SCHUCK**___              Name: __SUZANNE MIDDLETON__
        **PRESIDENT**

Title: _____              Title __C.F.O._____

26